**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELARA BRANDS, LLC, a New York limited liability company,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SMART GLOVE INTERNATIONAL PTE. LTD., a Singaporean company, and SM GLOVE SDN. BHD., a Malaysian company,<br><br>　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ELARA BRANDS, LLC, a New York limited liability company ("Plaintiff" or "Elara"), complains and alleges against defendants SMART GLOVE INTERNATIONAL PTE. LTD., a Singaporean company ("Smart Glove") and SM GLOVE SDN. BHD., a Malaysian company ("SM Glove") (collectively, "Defendants") as follows:

## PARTIES

1. Plaintiff Elara is a limited liability company organized and existing under the laws of the State of New York, having its headquarters and principal place of business in Jericho, New York.

2. Defendant Smart Glove is a Singaporean company organized and existing under the laws of Singapore, having its headquarters and principal place of business in Singapore.

3. Defendant SM Glove is a Malaysian company organized and existing under the laws of Malaysia, having its headquarters and principal place of business in Negeri Sembilan, Malaysia.

4. Plaintiff is informed and believes and thereon alleges that each and every defendant sued herein was at all times herein mentioned the principal, agent, or employee of each of the remaining defendants and was, at all times, acting within the purpose and scope of such relationship. As such, whenever any reference is made in this Complaint to any act of any defendant, that allegation shall mean that each defendant acted individually and jointly with the other defendants.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount at issue exceeds $75,000.

6. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and the contracts between the parties contemplate the purchase and supply of products in this judicial district.

## STATEMENT OF FACTS

7. On or around March 16, 2022, Elara and Smart Glove entered into a written Supply Agreement for Industrial Grade Gloves for the purchase and sale of 19,500,000 pieces of "9 inch … Powder Free Nitrile Finger Textured in Black and Smart Blue" glove product for the total price of $455,342.77 (the "Agreement").

8. The Agreement is further evidenced by the parties' email correspondence, invoices, receipts, and oral communications.

9. The Agreement provides, in relevant part, that "[Smart Glove] may also appoint and approved (sic) qualified Contract Manufacturers to manufacture and produce the gloves for [Elara] in accordance of [Elara's] requirement." Accordingly, Smart Glove appointed, approved, and contracted with SM Glove to manufacture and produce the gloves at issue.

10. The Agreement includes a "Seller's Warranty" which indicates all gloves are to be manufactured "in accordance with the prevailing quality standards."

11. In addition to the terms of the Agreement, Elara set forth several quality expectations, requirements, and standards for the gloves. Elara made clear that Smart Glove and SM Glove's compliance with the Agreement was dependent on their adherence to these quality standards and Elara's delivery requirements.

12. The Agreement called for Elara to issue purchase orders to Smart Glove, who would in turn issue proforma invoices upon acceptance and confirmation of the purchase orders.

13. Under the Agreement, Elara issued three such purchase orders: Purchase Order No. 2349, Purchase Order No. 2350, and Purchase Order No. 2358.

14. Upon mutual agreement of the parties, Elara later issued purchase orders to SM Glove as well.

15. The Agreement further provided that Elara was required to make a 30% payment/deposit upon receipt of Smart Glove's proforma invoices. The remaining 70% balance was required to be paid before the booking of each shipment.

16. Based on Defendants' assurances and representations of quality product, Elara proceeded to make payments even greater than what was required under the Agreement to Smart Glove.

17. To date, Elara has made a total payment of $378,967.77:

   a. Full payment of $154,552.54 for Purchase Order No. 2349;

   b. Full payment of $148,040.23 for Purchase Order No. 2358; and

   c. 50% deposit of $76,375.00 for Purchase Order No. 2350.

18. Purchase Order Nos. 2358 and 2349 were delivered to Elara's third-party warehouse on September 1 and 2, 2022, respectively.

19. Upon receipt, Elara immediately inspected and recognized that the gloves failed to meet even the most basic quality standards, much less the standards provided under the Agreement and mutually communicated and agreed to by the parties. Specifically, the gloves were essentially fused together, difficult or impossible to dispense, and difficult or impossible to don.

20. In an effort of good faith, Elara continued to inspect random cases to determine if the defects were isolated or pervasive throughout the entirety of the shipments.

21. On September 14, 2022, Elara concluded its inspection and advised Smart Glove

that the defects were indeed pervasive.

22. Purchase Order No. 2350 was delivered to Elara's third-party warehouse on October 11, 2022.

23. Because of the quality issues found with the prior two orders, Elara's personnel inspected this third purchase order as it was being unloaded. Again, Elara's inspection revealed that every single case of gloves contained the same defects.

24. On October 23, 2022, Elara again advised Smart Glove of the pervasive defects throughout all three shipments.

25. Since that date, Elara has cooperated in good faith with Smart Glove and SM Glove's requests. This includes, without limitation, providing Smart Glove with photos and videos of the defects, shipping samples back to Smart Glove for its own internal investigation, and corresponding with Smart Glove's personnel.

26. To date, Smart Glove and SM Glove have offered only unsubstantiated excuses and obfuscation, and they have wholly failed to offer any remedy to Elara.

## FIRST CAUSE OF ACTION

### (Breach of Contract as against Defendants)

27. Plaintiff incorporates by references paragraphs 1 through 26 as though fully set forth in this cause of action.

28. The Agreement between Elara and Smart Glove constitutes a valid and enforceable contract.

29. The Contract imposes certain duties and obligations on Defendants.

30. Plaintiff has performed all duties and obligations imposed on it under the Agreement, or it has been excused from performance by Defendants' breaches of the same.

31. Defendants breached the Agreement when, among other things, they sold defective product to Plaintiff that wholly fails to meet even the most basic quality standards.

32. Defendants continue to breach the Agreement by failing to accept return of the defective product and by failing to refund $378,967.77 to Plaintiff.

33. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered direct and consequential damages of at least $478,037.26, which includes the $378,967.77 paid to Defendants, at least $57,626.49 in shipping, duties, and other fees related to the transport of the defective product, at least $7,500.00 in labor, storage, and outbound fees that continue to accrue on a daily basis, at least $33,943.00 relating to branding and marketing costs, and lost profits and lost goodwill that continue to accrue, exclusive of costs and interest, subject to proof at trial.

## SECOND CAUSE OF ACTION

**(Breach of Implied Contract as against Defendants)**

34. Plaintiff incorporates by references paragraphs 1 through 33 as though fully set forth in this cause of action.

35. Through Plaintiff and Defendants' conduct, a valid and enforceable contract was formed for the purchase and sale of 19,500,000 pieces of "9 inch … Powder Free Nitrile Finger Textured in Black and Smart Blue" glove product for the total price of $455,342.77. Defendants knew, or had reason to know, that Plaintiff would interpret their conduct as an agreement to enter into a valid and enforceable contract.

36. The contract imposes certain duties and obligations on Defendants.

37. Plaintiff has performed all duties and obligations imposed on it under the contract, or it has been excused from performance by Defendants' breaches of the same.

38. Defendants breached the contract when, among other things, they sold defective

product to Plaintiff that wholly fails to meet even the most basic quality standards.

39. Defendants continue to breach the contract by failing to accept return of the defective product and failing to refund $378,967.77 to Plaintiff.

40. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered direct and consequential damages of at least $478,037.26, which includes the $378,967.77 paid to Defendants, at least $57,626.49 in shipping, duties, and other fees related to the transport of the defective product, at least $7,500.00 in labor, storage, and outbound fees that continue to accrue on a daily basis, at least $33,943.00 relating to branding and marketing costs, and lost profits and lost goodwill that continue to accrue, exclusive of costs and interest, subject to proof at trial.

### THIRD CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing as against Defendants)**

41. Plaintiff incorporates by references paragraphs 1 through 40 as though fully set forth in this cause of action.

42. Implied in every valid and enforceable contract is the covenant of good faith and fair dealing. The covenant imposes on each party to the contract the duty to do, among other things, everything that the contract presupposes each party will do to accomplish the contract's purpose.

43. Defendants' conduct, including, but not limited to, selling defective product to Plaintiff that wholly fails to meet even the most basic quality standards and failing to accept return of the defective product, have violated the implied covenant of good faith and fair dealing contained in the Agreement.

44. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered direct and consequential damages of at least $478,037.26, which includes the $378,967.77 paid

to Defendants, at least $57,626.49 in shipping, duties, and other fees related to the transport of the defective product, at least $7,500.00 in labor, storage, and outbound fees that continue to accrue on a daily basis, at least $33,943.00 relating to branding and marketing costs, and lost profits and lost goodwill that continue to accrue, exclusive of costs and interest, subject to proof at trial.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability as against Defendants)**

45. Plaintiff incorporates by references paragraphs 1 through 44 as though fully set forth in this cause of action.

46. Plaintiff purchased a product from Defendants who are merchants with respect to goods of that kind.

47. Defendants' product was defectively designed or manufactured, *i.e.*, not reasonably fit for its ordinary purpose. Specifically, the gloves were essentially fused together, difficult or impossible to dispense, and difficult or impossible to don.

48. The defect existed when Defendants delivered the product to Plaintiff.

49. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered direct and consequential damages of at least $478,037.26, which includes the $378,967.77 paid to Defendants, at least $57,626.49 in shipping, duties, and other fees related to the transport of the defective product, at least $7,500.00 in labor, storage, and outbound fees that continue to accrue on a daily basis, at least $33,943.00 relating to branding and marketing costs, and lost profits and lost goodwill that continue to accrue, exclusive of costs and interest, subject to proof at trial.

## FIFTH CAUSE OF ACTION

**(Conversion as against Defendants)**

50. Plaintiff incorporates by references paragraphs 1 through 44 as though fully set forth in this cause of action.

51. Plaintiff has paid the total sum of $378,967.77 to Defendants for the shipments of defective product.

52. Defendants failed to provide Plaintiff with acceptable product and, accordingly, Defendants have failed to comply with the Agreement. Therefore, Defendants have no right to Plaintiff's payment, and they have intentionally interfered and continue to intentionally interfere with Plaintiff's rights to the payment. Defendants have refused upon demand to refund the $378,967.77 payment under the Agreement to date.

53. Plaintiff did not consent to Defendants' wrongful conduct and interference.

54. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered direct damages of $378,967.77, exclusive of costs and interest, subject to proof at trial.

55. Defendants engaged in fraudulent and/or malicious conduct, in violation of public policy, so as to justify an award of exemplary and punitive damages in an amount according to proof.

## SIXTH CAUSE OF ACTION

**(Unjust Enrichment as against Defendants)**

56. Plaintiff incorporates by references paragraphs 1 through 50 as though fully set forth in this cause of action.

57. Plaintiff conferred upon Defendants an economic benefit, in the nature of providing $378,967.77 payment for defective product.

9

58. Defendants' financial benefits resulting from their unlawful and inequitable conduct are economically traceable to Plaintiffs' providing the payment under the Agreement.

59. The economic benefit derived by Defendants is a direct and proximate result of Defendants' unlawful conduct.

60. It would be inequitable and unjust for Defendants to be permitted to retain any of Plaintiff's payment resulting from their fraudulent, illegal, and inequitable conduct.

61. As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct. Plaintiff is accordingly entitled to equitable relief including restitution and/or disgorgement of all profits which may have been obtained by Defendants.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, and that Plaintiff be awarded:

A. Damages of at least $478,037.26, subject to proof at trial;

B. Pre- and post-judgment interest thereon;

C. Punitive and exemplary damages as a result of Defendants' conversion;

D. Restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment;

E. Costs of suit incurred herein; and

F. Such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action which are triable as a matter of right by a jury.

DATED this 14th day of November, 2022.

**HARRIS BRICKEN SLIWOSKI, LLP**

By: _____
Matthew Schwartz, SBN No. 5481668
Jihee Ahn, *pro hac vice to be filed*
27 E. 21st Street, 6th Floor
New York, NY 10010
Tel: (646) 681-5442
matthew@harrisbricken.com
jihee@harrisbricken.com
Attorneys for Plaintiff Elara Brands, LLC